ELIZA HILL *et al.*, Appellants, *v.* THOMAS L. STURGEON *et al.*, Respondents.

*Bailments—Common Carriers—Unseaworthiness.*—In an action against a common carrier for a loss, it is not sufficient to entitle the plaintiff to recover that there was a defect about the vessel, or want of skill in the carrier; but it must also appear that such defect or want of skill contributed or may have contributed to occasion the loss.

*Bailments—Common Carriers—Perils of Navigation.*—Where a loss is caused by the perils of the navigation within the exceptions of the bill of lading, it is not incumbent upon the carrier to show affirmatively the particular and identical cause of loss.

*Appeal from St. Louis Common Pleas Court.*

*S. Knox* and *J. H. Rankin,* for appellants.

The appellants refer the court to the following authorities as showing that the loss in this case was not a loss by the unavoidable dangers of the river, and as further showing that the court erred in refusing to give the instruction asked by the appellants: 4 Yerg. 48; 1 Sum. 218; 5 Yerg. 82; 6 Bing. 716; 7 Yerg. 342; 2 Watts, 114; 2 Sum. 571; 1 Nash, C. C. 17; 1 Mur. (N. C.) 417; 4 Bin. 127; 2 Bailey (S. C.) 161; Abbott on Ship. 475; 1 Wil. 282; Sto. on Bail., §§ 413, 492, 516; 8 Pet. 584–5; 3 Kent's Com. 210; 11 Mo. 306; 4 Camp. 203; 3 Stewart & Porter, 176; 6 Cow. 266; 8 Watts & Sarg. 44; Ang. on L. of Carr. §§ 160–2; 1 Nutt & McCord, 170; Ang. on L. of Carr. § 171; 28 Mo. 327.

*B. A. Hill,* for respondents.

This case is reported in 28 Mo. 323, and the record on

which that argument was made, I refer to, for a full statement of the case. I also refer to the old statement of the case, and the old briefs on both sides, to show the court that all the questions now raised by the appellants have been decided in this same case, and are *res adjudicata*.

BAY, Judge, delivered the opinion of the court.

This case was in this court at the March term, 1859, and is reported in 28 Mo. 323. The court then laid down certain principles of law applicable to the case, and among others it was held that a common carrier is an insurer of goods entrusted to him for carriage, and is liable in all events for any loss or damage, unless it happen by some cause or accident for which the law excuses him, or from some cause expressly excepted in the bill of lading, and that the burden is on him to show that he fully performed his contract, or that the goods were lost by one of the excepted perils; that the usual words in bills of lading " dangers of the river," mean only the natural accidents incident to river navigation, and do not embrace such as may be avoided by the exercise of that skill, judgment, or foresight, which are demanded from persons in a particular occupation; that it was incumbent upon the defendants to show that the loss was caused by a peril of the river which could not have been foreseen nor prevented by the exercise of skill or diligence, and that the last clause in the bill of lading was not designed to insure the goods shipped on the barge from loss that might happen to it by external violence. No objection was found by the court to the instructions given to the jury, as they embodied the principles of law above enunciated; but the judgment was reversed and cause remanded, because the court below refused to permit a witness to answer the question whether it was proper to suffer Decker to pilot the boat at the time and at the place of the accident. This court was of the opinion that the witness, who was an experienced pilot, was competent as an expert to answer the question, as he knew Decker and the place of the accident.

The evidence given upon the last trial does not differ materially from that given upon the former, nor is there any substantial difference in the instructions of the court; but our attention has been especially directed to two propositions of the plaintiffs, which, though made upon the former trial, were not urged with the same zeal as upon this. The first is, that if the defendants were in default they are liable, though the accident did not occur from such default; in other words, if Decker was not a competent pilot, the boat was not properly manned, and the defendants are liable though the loss was in nowise attributable to Decker's incompetency.

This proposition, we think, cannot be maintained upon reason or authority. The case of Hart v. Allen and Grant, 2 Watts, 114, is a leading case, and in most respects similar to the one at bar. In the opinion of the court, the subject is discussed with marked ability by C. J. Gibson; and the conclusion reached was, "that, in an action against a common carrier for a loss, it is not sufficient to entitle the plaintiff to recover, that there was a defect about the vessel, or want of skill in the carrier; but it must also appear that such defect or want of skill contributed, or may have contributed in some manner, to occasion the loss."

The facts of the case are as follows: Plaintiffs shipped on board of steamer Bolivar, at Cincinnati, nine chests of tea, to be delivered in good order at Pittsburgh, unavoidable accidents and the dangers of the river excepted. On account of the low stage of water, it was impossible for the Bolivar to make the voyage without great damage to the vessel and cargo, and when she reached Wheeling, the tea was put on a small keel-boat, which, on the passage up the river, was driven by a sudden squall of wind sidewise and upset, whereby the teas were wet and damaged. The plaintiffs gave evidence that the pilot of the keel-boat was not an experienced boatman or pilot, and upon this state of facts the inferior court charged the jury, "that although the accident resulted from the act of God, and could not have been prevented by any

human prudence or foresight, and although it would in this respect come within the exception that excuses the carrier in case of loss; still, if the crew of the boat was not sufficient, or if she was not under the control of a master or pilot sufficiently skilled to perform the duties corresponding to his station, the carrier cannot avail himself of the exception, nor excuse himself from responsibility to the owner to the extent of the injury done to the goods."

For the error in this instruction the judgment was reversed, the court very properly remarking that it is the consequences of negligence, not the abstract existence of it, for which a carrier is answerable.

This view of the law was entertained by this court in Collier v. Valentine, 11 Mo. 299. The main question in the case was, whether, if a steamboat not seaworthy, on which there is a contract of affreightment, departs on a voyage and is afterwards sunk, in an action against the owners for not providing proper means for safely carrying the cargo, the defendant can show, as a defence, that the loss was occasioned by a peril excepted in the contract, and was in no manner influenced by the defect of unseaworthiness, and that it would have happened even had the boat been seaworthy. The court held that the evidence was comptent as furnishing a good ground of defence. Judge Scott, who delivered the opinion, remarked that "a carrier ought to be liable for a loss occasioned by his default; but to hold him responsible for a loss by an excepted peril, not at all attributable to the default, would seem to be great injustice." While public policy requires that a common carrier should be held to a strict performance of his contract, and of every duty and obligation resting upon him, still it is not perceived what good can result from holding him liable for an act to which he has neither directly nor indirectly contributed.

The 2d proposition contended for by the appellants is, that though the sheering of the "Ironton" was caused by an unavoidable peril of the river, still it is not sufficient for the defendants to prove that fact, generally, but they must show

affirmatively the particular and identical cause of the sheering.

The proof in the case is, that it is a very common thing in the Mississippi river for boats to sheer, even in the hands of the best pilots; that various causes produce sheering, among which are boils in the river, eddies, cross currents, shoal water, snags, rocks, narrow channels, inequalities of the bottom, adverse winds, running too near a bar, defective model, improper loading of a boat, &c.; that many of these causes are readily guarded against, while others are invisible even to the practised and experienced eye. A jury might well be satisfied from the proof in a case that the sheering of a particular boat was caused by either boils, eddies or whirlpools, and yet be wholly unable to conjecture which, or whether it was the result of the three combined. An experienced and skillful pilot might be fully satisfied that one of the three causes produced it, without being able to specify the particular one; and to require the defendants to do it in all cases, would be, in many instances, requiring them to make proof of that which is not susceptible of proof.

We think, therefore, it is sufficient, if the defendants can show that the accident was the result of an unavoidable peril of the river, and was not contributed to by any negligence want of skill, or default on their part. The question was one of fact, which the court below properly submitted to the jury; and the jury having passed upon it, we are not disposed to interfere with the verdict.

The other judges concurring, the judgment will be affirmed.